UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
PATRICIO VICENTE ARTEAGA
BERREZUETA and AZUNCION ALEJANDRO
(a/k/a/ RICARDO) ULLAGUARI ASMAL,

      Plaintiffs,          MEMORANDUM
                     AND ORDER

  -against-

                    12 CV 4380 (RML)

ROYAL CROWN PASTRY SHOP, INC., (d/b/a
ROYAL CROWN PASTRY SHOP), et al.,

      Defendants.
-------------------------------------------------------------X

LEVY, United States Magistrate Judge:

      Plaintiffs and defendants cross-move for summary judgment under FED. R. CIV. P.

56.  This matter is before me on consent of the parties, pursuant to 28 U.S.C. § 636(c) (2009).

Plaintiffs seek summary judgment declaring that: (1) plaintiffs' claims are covered by the Fair

Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201-219 (2006); (2) defendants Joseph

Generoso ("Joseph"), Gian-Franco Generoso ("Gian-Franco"), and Royal Crown Antico

Panificio, Inc. ("RCA") are liable as employers under the FLSA and the New York Labor Law

(the "NYLL"), N.Y. LAB LAW §§650-665 (McKinney 2002); and (3) plaintiffs were employed

under circumstances that violated the FLSA and NYLL and are entitled to damages.  Plaintiffs

also seek partial summary judgment against defendant Teresa Generoso ("Teresa").  In response,

defendants have filed a cross-motion, seeking summary judgment on the issues of (1)

defendants' liability as employers under the FLSA and the NYLL; and (2) defendants' liability

for alleged violations of the FLSA and the NYLL.  I heard oral argument on March 13, 2014.

(See Transcript of Oral Argument, dated Mar. 13, 2014.)  For the reasons stated below,

plaintiffs' and defendants' motions for summary judgment are denied.

## BACKGROUND AND FACTS[1]

Plaintiffs Vicente Arteaga Berrezueta ("Berrezueta") and Azuncion Alejandro Ullaguari Asmal ("Asmal") commenced this action on August 21, 2012, alleging violations of the FLSA and the NYLL.  (Complaint, dated Aug. 21, 2012; Amended Complaint, dated Sept. 25, 2012 ("Am. Compl.").)  On December 16, 2013, the Honorable Frederic Block, United States District Judge, entered a default judgment against defendants Royal Crown Pastry Shop, Inc. ("Royal Crown I") and Frank Generoso ("Frank") (collectively, the "defaulting defendants") following their failure to appear in this action.  (Order, dated Dec. 16, 2013.)  On December 17, 2013, the Clerk of Court entered judgment against the defaulting defendants in the amount of $250,510.75.  (Judgment, dated Dec. 17, 2013.)  In September 2013, plaintiffs voluntarily dismissed their claims against Royal Crown Pastry Shop II, Inc. ("Royal Crown II"), Royal Crown Bakery, Inc. ("RCB"), Magnifico Catering, Inc. ("MCI"), and Paneantico Bakery Café, Inc.  (Stipulation of Dismissal, dated Sept. 17, 2013.)

Plaintiff Asmal asserts that he was hired in 1994 to work as a baker at Royal Crown I, located at 6512 14th Avenue in Brooklyn, New York (the "6512 location") and worked

---

[1]   Plaintiffs have served and filed a Statement of Undisputed Facts, in compliance with Local Civil Rule 56.1(a).  Rule 56.1(a) states that upon any motion for summary judgment, "there shall be annexed to the notice of motion a separate, short and concise statement . . . of the material facts as to which the moving party contends there is no genuine issue to be tried."  Defendants did not separately annex their Rule 56.1 statement to their motion.  Instead, defendants' Rule 56.1 statement was included in defendants' memorandum of law.  (See Defendants' Statement of Material Facts ("Defs.' Rule 56.1"), included in Memorandum of Law in Support of Defendants Motion for Summary Judgment, filed Jan. 10, 2014 ("Defs.' Mem."), at 5-6, annexed to Defendants' Motion for Summary Judgment, filed Jan. 10, 2014.)  Defendants also failed to include citations to the record for some of the facts asserted in their Rule 56.1 statement.  However, courts are given "broad discretion to determine whether to overlook a party's failure to comply with local court rules."  Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted).  Defendants' Rule 56.1 statement is deemed admitted for purposes of this Memorandum and Order.  Unless otherwise noted, the facts set forth below are uncontroverted.

there through August 6, 2011.  (Plaintiffs' Rule 56.1 Statement, dated Jan. 10, 2014 ("Pls.' Rule 56.1"), ¶¶ 1, 18; Am. Compl. ¶ 9.)  Plaintiff Berrezueta asserts that he was employed at the 6512 location from August 1, 2007 through August 1, 2011.  (Pls.' Rule 56.1 ¶¶ 8-9.)  Berrezueta's responsibilities included cleaning the premises and preparing baked goods for sales and deliveries.  (Id. ¶¶ 9-11.)  Plaintiffs claim that they consistently worked more than forty hours per week, and that defendants willfully failed to pay them the applicable state and federal minimum wage, overtime, and spread-of-hours amounts.  (Am. Compl. ¶¶ 2-3.)

Royal Crown I was opened at the 6512 location in 1987.  (Pls.' Rule 56.1 ¶¶ 18-19.)  Joseph and Frank Generoso, who are brothers, each owned fifty percent (50%) of the business.  (Id. ¶ 18.)  Royal Crown I was dissolved on January 25, 2012.  (Id. ¶ 20.)  At the time of the dissolution, Joseph's residence was listed as Royal Crown I's Principal Executive Office.  (Id.)  In the early 1990s, Joseph opened a second bakery, Royal Crown II, at 6308 14th Avenue in Brooklyn, New York (the "6308 location").  (Id. ¶¶ 27-28.)  At the time of Royal Crown II's dissolution on October 25, 2012, the corporation's Principal Executive Office was a residence belonging to Frank, and New York state records listed its Principal Executive Officer as Joseph.  (Id. ¶ 29.)  The kitchen at Royal Crown II was identical to the kitchen at Royal Crown I in all material respects.  (Id. ¶ 33.)  The production process for baking bread at Royal Crown II was modeled after that of Royal Crown I.  (Id. ¶ 34.)  Occasionally, Royal Crown II shared ingredients with Royal Crown I at no charge.  (Id. ¶¶ 35-36.)  Royal Crown II regularly sold and delivered bread baked on its premises to other business, such as restaurants, for use in those businesses' food-service operations.  (Id. ¶¶ 37.)  The restaurants to which Royal Crown II delivered goods included at least one restaurant that had a location in New Jersey.  (Id. ¶ 38; Defs.' Response to Pls.' Rule 56.1, dated Jan. 31, 2014 ("Defs.' Resp."), ¶ 38.)  Plaintiffs assert

that, beginning in September of 2007, Royal Crown II was owned or operated at least in part by

RCB; that RCB is owned in part by Joseph's wife; and that Joseph participates in the day-to-day

operations of the business and considers himself an owner of RCB.  (Pls.' Rule 56.1 ¶ 30.)

Defendants dispute this assertion.  (Defs.' Resp. ¶ 30.)

   Joseph and Frank signed an agreement, dated September 11, 2007 (the

"September 11 agreement"), expressing their mutual desire to have Royal Crown II be owned

solely by Joseph and Royal Crown I be owned solely by Frank.  (Pls.' Rule 56.1 ¶¶ 58-59.)  The

agreement stated that, upon execution, Joseph was to transfer his shares in Royal Crown I to

Frank, and that Frank was to transfer his shares in Royal Crown II to Joseph.  (Id. ¶¶ 59-60.)

The parties dispute whether the agreement was executed.  (Id. ¶¶ 60-63; Defs.' Resp. ¶¶ 58-60.)

Plaintiffs maintain that the corporate records reflecting the business transactions of the two

bakeries fail to demonstrate a transfer in ownership.  (Pls.' Rule 56.1 ¶¶ 61-63.)  Defendants

contend that the agreement was fully executed and the shares transferred but cannot produce

evidence documenting the transaction because defendants were unable to locate Royal Crown

II's corporate books following the company's dissolution.  (Defs.' Resp. ¶¶ 61-63.)

   Defendant Gian-Franco Generoso is Frank's son and Joseph's nephew.  (Pls.'

Rule 56.1 ¶ 22.)  In August 2008, Gian-Franco opened RCA, a bakery at the 6512 location that

operated from the same physical space as Royal Crown I.  (Pls.' Rule 56.1 ¶¶ 21-22; Defs.'

Resp. ¶ 21.)  Gian-Franco disputes that plaintiffs were employed by RCA at any point.  (Defs.'

Resp. ¶ 21.)

   Magnifico Catering, Inc. ("MCI") was a restaurant located at 6314 14th Avenue

in Brooklyn, New York (the "6314 location"), next door to Royal Crown II.  (Pls.' Rule 56.1 ¶

39.)  MCI did business from 2005 until on or about October 29, 2011.  (Id.)  MCI was owned or

operated by Teresa Generoso, who is Frank's daughter, Gian-Franco's sister, and Joseph's niece. (<u>Id.</u> ¶ 40.)  Frank would occasionally visit Teresa and provide her with advice or assistance.  (<u>Id.</u> ¶ 41; Defs.' Resp. ¶ 41.)  A sign placed outside MCI included the words "Royal Crown."  (Pls.' Rule 56.1 ¶ 42.)  MCI purchased bread baked by Royal Crown I and delivered by plaintiff Berrezueta.  (<u>Id.</u> ¶ 43; Defs.' Resp. ¶ 43.)

DISCUSSION

I.  <u>Summary Judgment Standard</u>

Both parties have fully briefed cross-motions for summary judgment.  Summary judgment is appropriate only if the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  In determining whether a genuine issue of material fact exists, courts must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  <u>Patterson v. Cnty. of Oneida</u>, 375 F.3d 206, 219 (2d Cir. 2004) (citations omitted).  "The party opposing summary judgment 'may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence' in support of its factual assertions."  <u>Sussman v. Rabobank Int'l</u>, 739 F. Supp. 2d 624, 627 (S.D.N.Y. 2010) (quoting <u>D'Amico v. City of N.Y.</u>, 132 F.3d 145, 149 (2d Cir. 1998)).  "The same standard applies where the parties file cross-motions for summary judgment, and each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration."  <u>Id.</u> (internal quotation marks and citations omitted).

"It is well-settled that "[o]n a motion for summary judgment, the court is not to weigh the evidence, or assess the credibility of the witnesses, or resolve issues of fact, but only to determine whether there are issues to be tried."  <u>United States v. Rem</u>, 38 F.3d 634, 644 (2d Cir.

1994) (citations omitted).  A genuine factual issue exists if, taking into account the burdens of production and proof that would be required at trial, there is sufficient evidence favoring the non-movant such that a reasonable jury could return a verdict in that party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Second Circuit has noted:

> [w]hen faced with cross–motions for summary judgment, a district court is not required to grant judgment as a matter of law for one side or the other.  "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."

Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993) (quoting Schwabenbauer v. Board of Educ. of Olean, 667 F.2d 305, 314 (2d Cir. 1981)).

## II.  FLSA Coverage

Employers are liable under the FLSA for minimum wages and overtime compensation "if an employee is either (1) employed by an enterprise engaged in commerce or in the production of goods for commerce, or (2) engaged in commerce or in the production of goods for commerce."  Locke v. St. Augustine's Episcopal Church, 690 F. Supp. 2d 77, 84 (E.D.N.Y. 2010) (citing 29 U.S.C. §§ 206, 207(a)(1) (2007, 2000)).  "The two categories are typically referred to as 'enterprise' and 'individual' coverage, respectively."  Romero v. Jocorena Bakery, Inc., No. 09 CV 5402, 2010 WL 4781110, at *2 (E.D.N.Y. Nov. 23, 2010) (citing Locke, 690 F. Supp. 2d at 84).

### A.  FLSA Enterprise Coverage

Plaintiffs seek summary judgment on the issue of FLSA enterprise coverage, asserting that plaintiffs worked in an enterprise comprised of: the 6512 location, and the affiliated entities Royal Crown I and RCA; the 6308 location, and the affiliated entities Royal Crown II and RCB; and MCI, at the 6314 location (collectively, the "Royal Crown entities").

(Plaintiffs' Memorandum in Support of Motion for Summary Judgment, dated Jan. 10, 2014

("Pls.' Mem."), at 13-14.)  Defendants maintain that the FLSA does not cover the Royal Crown

entities as an enterprise.  (Memorandum of Law in Support of Defendants' Motion for Summary

Judgment, filed Jan. 10, 2014 ("Defs.' Mem."), at 8, annexed to Defendants' Motion for

Summary Judgment, filed Jan. 10, 2014.)

   The FLSA provides coverage for employees who are "'employed in an

'enterprise' engaged in commerce or in the production of goods for commerce'" where (1) the

employees "engaged in commerce or in the production of goods for commerce," or the

employees "handled, sold, or otherwise worked on goods or materials that have been moved in

or produced for commerce by any person" and (2) the enterprise had an annual gross volume of

sales made or business done totaling at least $500,000.  <u>Locke</u>, 690 F. Supp. 2d at 84 (citing 29

U.S.C. § 203(s)(1)(A)(i)-(ii)).

   An entity constitutes an "enterprise" under the FLSA where "the related activities

[are] performed (either through unified operation or common control) by any person or persons .

. . for a common business purpose . . . ."  29 U.S.C. § 203(r)(1) (2006).  Courts use a three-part

test to determine when an entity is an enterprise: "(1) the entity or entities must engage in related

activities, (2) performed through unified operation or common control, (3) for a common

business purpose."  <u>Bowrin v. Catholic Guardian Soc'y</u>, 417 F. Supp. 2d 449, 465–66 (S.D.N.Y.

2006).

 1.  <u>Interstate Commerce Requirement</u>

   Plaintiffs have demonstrated that the 6512 location and the 6308 location were

engaged in the production of bread, at least some of which was delivered to New Jersey

(Affidavit of Azuncion Asmal in Support of Motion for Default Judgment, sworn to Dec. 21,

2012 ("Asmal Def. Aff."), ¶ 2, annexed as Ex. A to Declaration of George N. Bauer, Esq. in

Support of Plaintiffs' Motion for Summary Judgment, dated Jan. 10, 2014 ("Bauer Decl.");

Affidavit of Patricio Berrezueta in Support of Motion for Default Judgment, sworn to Dec. 21,

2012 ("Berrezeuta Def. Aff."), ¶ 2, annexed as Ex. B to the Bauer Decl.; Deposition of Guiseppe

"Joseph" Generoso, dated June 17, 2013 ("Joseph Dep."), at 346:14-347:3, annexed as Ex. N to

the Bauer Decl.); employees of the businesses performed, among other tasks, baking and

janitorial services; and employees regularly handled goods, including baking utensils and

janitorial and cleaning supplies, that moved in interstate commerce (Pls.' Mem. at 16-17;

Deposition of Patricio Berrezueta, dated July 25, 2013, at 7:20-21, 15:15-25, annexed as Ex. M

to the Bauer Decl.).

   Courts have regularly determined that "employees 'handled, sold, or otherwise

worked on goods or materials that have been moved in or produced for commerce' where the

employer's business consumed products in the course of operation." Locke, 690 F. Supp. 2d at

88-89 (citing Archie v. Grand Cent. P'ship, Inc., 997 F. Supp. 504, 529-30 (S.D.N.Y. 1998)).

See, e.g., Yang Li v. Ya Yi Cheng, No. 10 CV 4664, 2012 WL 1004852, at *5 (E.D.N.Y. Mar.

23, 2012) ("[T]he restaurant's purchase of . . . ingredients seems enough to satisfy the first part

of the statutory requirement for enterprise coverage . . . those supplies almost certainly crossed

state lines before being purchased by Defendants."); Shim v. Millennium Grp., No. 08 CV 4022,

2009 WL 211367, at *3 (E.D.N.Y. Jan. 28, 2009) ("[I]t is simply inconceivable that none of the .

. . custodial . . . supplies . . . originated outside of New York"); Boekemeier v. Fourth

Universalist Soc'y in City of N.Y., 86 F. Supp. 2d 280, 285-86 (S.D.N.Y. 2000) ("Plaintiff's

handling of janitorial goods that have moved in commerce . . . [is] more than sufficient to invoke

enterprise coverage.").  Plaintiffs have thus demonstrated that the Royal Crown entities meet the interstate commerce requirement.

2.  <u>Gross Volume Requirement</u>

The FLSA covers entities with no less than $500,000 in annual gross volume of sales made or business done.  29 U.S.C. § 203(s)(1)(A)(ii).  Plaintiffs assert that the combined gross annual sales of the Royal Crown entities exceeded $500,000 from 2007 to 2012.  (Pls.' Rule 56.1 ¶¶ 47-54.)  Defendants counter that the only single entity that exceeded $500,000 in annual gross sales was RCB, and that MCI, Royal Crown I, and Royal Crown II, either individually or jointly, did not exceed $500,000 in annual gross sales at any time between 2007 and 2012.  (Defs.' Resp. ¶¶ 49-54.)  Plaintiffs have submitted tax returns demonstrating that RCB had annual gross sales exceeding $500,000 for the period of 2007 to 2012.  (RCB Tax Returns, annexed as Ex. Y to the Bauer Decl.)  Plaintiffs also have submitted tax returns for RCA, which show that RCA's annual gross sales were less than $500,000 for the period from 2008 to 2010.  (RCA Tax Returns, annexed as Ex. Z to the Bauer Decl.)

There appears to be no genuine dispute of material fact as to plaintiffs' assertion that the operations of the Royal Crown entities maintained a <u>combined</u> annual gross volume of sales of at least $500,000.  However, as explained in more detail <u>infra</u>, there are issues of fact as to whether the Royal Crown entities constitute or constituted a single enterprise.  Thus, at trial, if the trier of fact concludes that the Royal Crown entities do not constitute a single enterprise under the FLSA, then it must determine whether each entity individually had gross annual sales of $500,000 or more in any given year during the relevant period.  <u>See</u> <u>Garcia v. Serpe</u>, No. 08 CV 1662, 2012 WL 380253, at *8 (D. Conn. Feb. 6, 2012).

3.   Enterprise Coverage

"Enterprise coverage has been interpreted broadly" by courts.  Boekemeier, 86 F. Supp. 2d at 285.  "Activities of more than one entity are related where the entities provide mutually supportive services to the substantial advantage of each entity."  Locke, 690 F. Supp. 2d at 85 (internal quotation marks and citation omitted).  "Activities are considered related when they are auxiliary or service activities such as central office and warehousing activities, or bookkeeping, auditing, purchasing, advertising, and other services."  Boekemeier, 86 F. Supp. 2d at 286.  "Entities constitute a unified operation by performing activities as a single business unit or an organized business system which is an economic unit directed to the accomplishment of a common business purpose."  Locke, 690 F. Supp. 2d 77 at 86 (internal quotation marks and citation omitted).  "Common control" exists "where the performance of the described activities are controlled by one person or by a number of persons, corporations, or other organizational units acting together."  29 C.F.R. § 779.221.

"Common ownership standing alone does not bring unrelated activities within the scope of the same enterprise . . . .  However, if it appears that there is a reasonable relationship of all the activities to a single business purpose a different conclusion might be warranted."  29 C.F.R. § 779.211.  "In circumstances where different entities are involved, the critical inquiry is operational interdependence in fact.  The provision of mutually supportive services to the substantial advantage of each entity are operationally interdependent and may be treated as a single enterprise under the Act."  Bowrin, 417 F. Supp. 2d at 458 (internal quotation marks and citations omitted).

I conclude that there are genuine disputes of material fact that preclude a grant of summary judgment as to whether the Royal Crown entities constitute a single enterprise under

the FLSA.  Plaintiffs argue that defendants operated the Royal Crown entities as a single

enterprise.  (Pls.' Mem. 13-16.)   Specifically, they allege that the Royal Crown entities were all

engaged in baking the same kind of Italian breads and pastries; that the entities occasionally

shared ingredients at no cost; that the kitchen at the 6308 location was identical to the kitchen at

the 6512 location in all material respects; and that the two locations baked and sold bread using

the same recipes and baking techniques.  (Pls.' Rule 56.1 ¶¶ 26, 33-34, 41, 43; Joseph Dep. at

121:3-25.)  They have also provided evidence that the Royal Crown entities had a common

association through their use of the "Royal Crown" name and signage; that Joseph has sought, on

behalf of a company he owns, to trademark the Royal Crown name; and that "Royal Crown"

became synonymous with a certain quality of baked goods.  (Pls.' Rule 56.1 ¶¶ 24-26, 32, 42,

44-45; Joseph Dep. at 366:5-368:25; Deposition of Teresa Generoso, dated July 3, 2013 ("Teresa

Dep."), at 36:15-25, 62:16-23; 64:3-65:12, annexed as Ex. O to the Bauer Decl.)  Plaintiffs state

that the Royal Crown entities used consolidated bookkeeping, and that Royal Crown I, Royal

Crown II, RCA, and MCI used the same accountant, Stephen Calindo, to maintain corporate

records and prepare tax returns for each entity.  (RCB Second Supplemental Response to

Interrogatories, Response No. 5, annexed as Ex. H to the Bauer Decl.; Teresa Dep. at 78:20-

79:25; Deposition of Gian-Franco Generoso, dated July 15, 2013 ("Gian-Franco Dep."), at

38:21-39:25, annexed as Ex. P to the Bauer Decl.; Deposition of Concetta Generoso, dated May

30, 2013, at  40:6-41:18, annexed as Ex. Q to the Bauer Decl.)

    However, defendants argue that the Royal Crown entities each operated

independently, not for a common business purpose, and should not be treated as a single

enterprise under the FLSA.  (Defs.' Resp. ¶¶ 41-54; Defs.' Mem. at 8.)  Defendants deny that the

Royal Crown entities sought to benefit from a common association with the "Royal Crown"

name; argue that plaintiffs mischaracterize personal opinions expressed in the deposition

testimony of Teresa and Joseph; assert that the company for which Joseph sought the "Royal

Crown" trademark is solely used to purchase ingredients for his business and is unrelated to the

other Royal Crown entities; and have submitted records showing that a number of other,

unrelated businesses in New York also use the name "Royal Crown."  (Defs.' Resp. ¶¶ 25, 42,

44-45; N.Y. Dep't of State, Division of Corporations, annexed as Ex. D to Defs.' Resp.)  They

assert that Joseph ran Royal Crown II separately, and without any input from Frank or Royal

Crown I; that Frank ran Royal Crown I separately and without any input from Joseph or Royal

Crown II; and that the two businesses shared ingredients at no cost at most once or twice a year.

(Defs.' Resp. ¶¶ 34-36; Joseph Dep., dated June 17, 2013 ("Joseph Def. Dep."), at 55:5-17,

65:14-66:12, 85:3-94:7, 96:11-15, annexed as Ex. C to Defs.' Resp.; Affidavit of Joseph

Generoso in Support of Motion for Summary Judgment, sworn to Jan. 10, 2014, ¶¶ 5-6, 9.)

       Defendants also state that Gian-Franco ran RCA separately and without any

assistance from other defendants, and that Teresa ran MCI separately and independently from the

other Royal Crown entities.  (Teresa Dep. at 63:2-64:25, annexed as Ex. G to Defs.' Resp.; Gian-

Franco Dep., dated July 15, 2013 ("Gian-Franco Def. Dep."), at 12:23-13:25, 38:2-6, annexed as

Ex. B to Defs.' Resp.; Affidavit of Gian-Franco Generoso in Support of Motion for Summary

Judgment, sworn to Jan. 10, 2014 ("Gian-Franco Aff."), ¶¶ 2-3, annexed to Defs.' Mem.;

Affidavit of Teresa Generoso in Support of Motion for Summary Judgment, sworn to Jan. 10,

2014 ("Teresa Aff."), ¶¶ 2, 4-5, annexed to Defs.' Mem.; Teresa Generoso Supplemental

Response to First Set of Interrogatories, dated June 11, 2013, Response Nos. 1, 2, 4, annexed as

Ex. F to the Bauer Decl.)  Defendants deny that all of the Royal Crown entities followed the

same bookkeeping and wage payment practices, and assert that RCA did not use the same

accountant as the other Royal Crown entities until 2011.  (Defs.' Resp. ¶ 46; Gian-Franco Def. Dep. at 38:7-38:25.)

I conclude that the evidence presented by the parties demonstrates that there are disputed issues of material fact as to whether the Royal Crown entities were operationally interdependent and should be treated as a single enterprise under the FLSA.  Therefore, plaintiffs' and defendants' motions for summary judgment as to FLSA enterprise coverage are denied.

B.  Individual Coverage

Plaintiffs also seek summary judgment as to individual coverage under the FLSA. (Pls.' Mem. at 12.)  The FLSA's individual coverage provision provides that any individual employee "engaged in commerce or in the production of goods for commerce" is covered by the FLSA, regardless of whether his or her employer is an enterprise.  29 U.S.C. §§ 206(a), 207(a)(1); see Kaur v. Royal Arcadia Palace, Inc., 643 F. Supp. 2d 276, 292 (E.D.N.Y. 2007).

Individual employees are engaged in commerce when they perform "work involving or related to the movement of persons or things" between states.  29 C.F.R. § 779.103. A "substantial part" of the employee's work must be related to interstate commerce.  Walling v. Jacksonville Paper Co., 317 U.S. 564, 572 (1943); Skidmore v. John J. Casale, Inc., 160 F.2d 527, 530 (2d Cir. 1947).  "[S]poradic or occasional shipments of insubstantial amounts of goods are insufficient to bring an employee within the coverage of the [FLSA]."  Remmers v. Egor, 332 F.2d 103, 104 (2d Cir. 1964) (internal quotation marks and citation omitted).  "[W]here an employee's interstate activities are de minimis, or not regular or recurring, as a practical matter neither courts nor the [Department of Labor] consider the employee covered under the FLSA." Bowrin, 417 F. Supp. 2d at 466.  See also U.S. Dep't of Labor, Employment Standards Admin.,

-13-

Wage & Hour Div., Field Operations Handbook § 11a01(a) (1994), available at http://www.dol.gov/whd/FOH/FOH_Ch11.pdf. "To determine whether an individual employee is engaged in commerce, courts conduct a fact-specific inquiry into the employment actions of each and every employee asserting a claim under the [FLSA]." Jacobs v. N.Y. Foundling Hosp., 483 F. Supp. 2d 251, 257 (E.D.N.Y. 2007), aff'd, 577 F.3d 93 (2d Cir. 2009) (citations omitted).

As discussed above, plaintiffs have established that the 1608 location sent goods through interstate commerce on at least one occasion. The parties agree that the restaurants to which the 1608 location and Royal Crown II sold and delivered goods included at least one restaurant that had a location in New Jersey. (Pls.' Rule 56.1 38; Defs.' Resp. ¶ 38; Joseph Dep. at 346:3-347:5.) Plaintiffs also assert that they personally prepared food such as bread for distribution and sale in New Jersey. (Asmal Def. Aff. ¶ 2; Berrezueta Def. Aff. ¶ 2.)

However, the present record does not sufficiently disclose the amount of work performed by plaintiffs on the items that were sent into interstate commerce. Thus, the court cannot assess whether such work constituted a substantial part of plaintiffs' activities. "Whether it was a substantial part of plaintiffs' activities will be one of the issues to be proved at trial." Kaur, 643 F. Supp. 2d at 292. Plaintiffs' motion for summary judgment as to individual FLSA coverage is denied.

III. "Employer" Status

Even if plaintiffs could establish FLSA coverage, to be held liable under the FLSA, a person must be an "employer," which the FLSA defines as including "any person acting directly or indirectly in the interest of an employer in relation to an employee."[3] 29 U.S.C. §

---

[3] "'[C]ourts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA.'" Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 308 (S.D.N.Y. 2011) (quoting Jiao v. Shi Ya Chen, No. 03 CV 0165, 2007 WL 4944767, at *9
Continued on the next page…

-14-

203(d).  In deciding whether an individual is an employer, "the overarching concern is whether the alleged employer possessed the power to control the workers in question, . . . with an eye to the 'economic reality' presented by the facts of each case."  Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (citing Goldberg v. Whitaker House Coop., 366 U.S. 28, 33 (1961); Carter v. Dutchess Cmty. College, 735 F.2d 8, 12 (2d Cir. 1984)).  Under the "economic reality" test, the factors include "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'"  Id. (quoting Carter, 735 F.2d at 12).

Since the test is not "confined to a narrow legalistic definition," no one of these factors is dispositive.  Id.  Instead, "economic reality is determined based upon all the circumstances."  Id.  (emphasis in original).  "Officers and owners of corporations may be deemed employers under the FLSA where the individual has overall operational control of the corporation, possesses an ownership interest in it, controls significant functions of the business, or determines the employees' salaries and makes hiring decisions."  Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 2d 184, 192 (S.D.N.Y. 2003) (internal quotation marks and citations omitted).  "Ownership, or a stake in a company, is insufficient to establish that an individual is an 'employer' without some involvement in the company's employment of the employees."  Irizarry v. Catsimatidis, 722 F.3d 99, 111 (2d Cir. 2013).  The court must evaluate

n.12 (S.D.N.Y. Mar. 30, 2007)); see also Yang v. ACBL Corp., 427 F. Supp. 2d 327, 342 n.25 (S.D.N.Y. 2005) ("The 'economic reality' test will be used to determine whether Lee is Yang's 'employer' as defined under both state and federal law, as there is general support for giving FLSA and the New York Labor Law consistent interpretations." (internal quotation marks and alterations omitted)).  Therefore, the same standards apply to plaintiffs' state law claims.

the totality of the circumstances to determine whether a defendant had "operational control." Herman, 172 F.3d at 139-40. "The question of whether an individual is an employer under the FLSA is a mixed question of law and fact; 'the existence and degree of each relevant factor lend[s] itself to factual determinations. Therefore, individual employer liability is rarely suitable for summary judgment.'" Sethi v. Narod, 974 F. Supp. 2d 162, 187 (E.D.N.Y. 2013) (quoting Berrios v. Nicholas Zito Racing Stable, Inc., 849 F. Supp. 2d 372, 393 (E.D.N.Y. 2012)).

A.   Joseph Generoso

It is undisputed that during a period that included at least September 2006 to September 11, 2007, Joseph owned fifty percent of Royal Crown I, the bakery where plaintiffs allege they were employed.  (Joseph Dep. at 33:04-33:11, 127:08-127:19, 129:03-129:06; Agreement for Withdrawal of Joseph Generoso as Shareholder of Royal Crown Pastry Shop, Inc., dated Sept. 11, 2007, annexed as Ex. AA to the Bauer Decl.)  As noted above, plaintiffs assert that Joseph remained a fifty percent owner of Royal Crown I, because the September 11 agreement was not executed, while defendants contend that it was fully executed.  Plaintiffs assert that, as an owner of Royal Crown I, Joseph possessed the authority to hire and fire, control schedules and work conditions, and sign paychecks for the 6512 location's employees.  (Pls.' Rule 56.1 ¶ 65; Joseph Dep. at 129:3-130:10, 169:19-23.)

Defendants claim that Joseph was not involved in Royal Crown I's employment of plaintiffs at the 6512 location.  (Defendants' Statement of Material Facts ("Defs.' Rule 56.1"), included in Defs.' Mem., ¶ 6.)  Joseph maintains that he never paid the employees at Royal Crown I, that he did not set employees' work schedules, that his brothers Frank and Anthony exercised actual managerial control over the employees at Royal Crown I, and that he saw plaintiff Asmal only two or three times during Asmal's entire employment.  (Id.; Joseph Def.

-16-

Dep. at 48:9-49:24, 55:4-25, 59:13-25, 65:1-66:17, 73:12-25.)  Joseph testified that once he

opened Royal Crown II, Frank operated Royal Crown I without his interference or input.

(Joseph Def. Dep. at 86:3-90:10.)  Joseph claims that even if he possessed a certain degree of

authority prior to September 11, 2007, he never exercised that authority in relation to plaintiffs or

any other employees of Royal Crown I, and should not be considered an employer for the

purposes of the FLSA.  (Defs.' Mem. at 7-8.)

        Applying these facts to the Carter factors, there are disputed issues that prevent

the court from deciding whether Joseph is an employer.  As to the first Carter factor, it appears

that as a corporate officer of Royal Crown I, Joseph had the power to hire or fire plaintiffs, at

least through September 11, 2007.  As to the second and third Carter factors, based on the

evidence in the record, there are disputed issues of fact as to whether Joseph supervised, directed,

or controlled plaintiffs' work schedules, tasks, or conditions of employment or determined the

rate and method of payment.  Though it appears from the record that Joseph did not maintain

employment records as required by the fourth Carter factor, the failure to satisfy this fourth

factor is not dispositive.  Herman, 172 F.3d at 139 (citing Brock v. Superior Care, Inc., 840 F.2d

1054, 1059 (2d Cir. 1988)).  Based on the foregoing, the court cannot determine as a matter of

law whether Joseph was an "employer" under the FLSA.  Defendants' and plaintiffs' motions for

summary judgment as to Joseph Generoso's employer status are therefore denied.

B.  Gian-Franco Generoso and RCA

        Plaintiffs assert that RCA and Gian-Franco were employers of any and all

employees of the 6512 location from August 2008 through August 2011, and that Gian-Franco

also was responsible for all aspects of the RCA business at the 6512 location during that time.

(Pls.' Rule 56.1 ¶ 65; RCA Supplemental Response to First Set of Interrogatories, dated June 11,

2013, Response No. 4, annexed as Ex. D to the Bauer Decl.)  Defendants respond that, pursuant to Gian-Franco's deposition testimony, neither of the plaintiffs were employees of RCA or Gian-Franco during the years 2008 to 2011.  (Gian-Franco Def. Dep. at 21:13-21:21.  See also Gian-Franco Aff. ¶ 2; Defs.' Rule 56.1 ¶ 9.)  During his deposition, Gian-Franco insisted that he had no specific recollection of meeting plaintiffs, that plaintiffs were never employed by RCA at the 6512 location, and that he ran the entire 6512 bakery operation completely by himself from August 2008 through 2012, without any employees and with only minor assistance from friends or family members.  (Gian-Franco Def. Dep. at 38:2-6.)  Defendants also assert that, aside from "a portion of August 2011," Gian-Franco Generoso did not set plaintiffs' work schedules, or give them orders, and was not otherwise involved in any way with their day-to-day employment, and that Gian-Franco operated RCA as a separate business from the one that employed plaintiffs at the 6512 location.  (Defs.' Rule 56.1 ¶ 8; Defs.' Resp. ¶ 65.)

Plaintiffs assert that Gian-Franco's deposition testimony is incredible and improbable, and that other evidence, including testimony from other defendants, is inconsistent with his testimony.  (See, e.g., Teresa Dep. at 67:2-25 (testifying that plaintiff Berrezueta delivered bread from the 6512 location to MCI on a daily basis through 2011); Deposition of Azuncion Asmal, dated July 25, 2013, at 49:11-25, annexed as Ex. A to Defs.' Resp. (testifying that Gian-Franco took over as the "owner" at the 6512 location while he was working there in 2011).  See also Plaintiffs' Reply Memorandum in Support of Motion for Summary Judgment, dated Feb. 14, 2014, at 4-7.)

However, at the summary judgment stage, the court "may not weigh the credibility of the evidence, regardless of whether that evidence is inherently implausible or in conflict with other, more trustworthy evidence."  Alvarez v. Michael Anthony George Const.

Corp., No. 11 CV 1012, 2014 WL 1679063, at *6 (E.D.N.Y. Apr. 29, 2014) (quotation marks

and citation omitted).  See also Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010) ("In

reviewing the evidence and the inferences that may reasonably be drawn, the court may not make

credibility determinations or weigh the evidence."  (internal quotation marks and citation

omitted)).  Accordingly, the court finds that the statements in Gian-Franco's deposition raise a

triable issue of fact as to whether Gian-Franco or RCA were plaintiffs' employers for the

purposes of the FLSA and the NYLL.  See Schear v. Food Scope Am., Inc., 297 F.R.D. 114, 135

(S.D.N.Y. 2014).  Therefore, summary judgment is not appropriate.  Plaintiffs' and defendants'

motions for summary judgment as to Gian-Franco Generoso's and RCA's employer status are

denied.

C.  Teresa Generoso

Defendants seek summary judgment stating that Teresa Generoso was not an

employer of plaintiffs.  (Defs.' Mem. at 8; Defs.' Rule 56.1 ¶ 7.)  Defendants state that Teresa

Generoso did not have the power to hire or fire employees at Royal Crown I or the 6512

location, did not supervise or control their work, did not pay them, and was not responsible for

keeping any employment records for Royal Crown I or the 6512 location.  (Teresa Aff. ¶¶ 2-5;

Teresa Dep. at 17:2-24, 61:6-64:8).  They assert that Teresa's only contact with Royal Crown I

was that she worked behind the counter on some occasions, but that she was otherwise occupied

running MCI.  (Teresa Dep. at 32:2-5, 78:2-12.)

However, plaintiffs assert that there is a genuine issue of material fact as to

whether Teresa was plaintiffs' employer.  (Plaintiffs' Opposition to Defendants' Motion for

Summary Judgment, dated Jan. 31, 2014, at 10.)  Plaintiffs have provided evidence that Teresa

Generoso worked regularly at the 6512 location for certain periods of time every year, that she

directed plaintiffs to prepare some of the food orders, and that she personally delivered pay to at least one of the plaintiffs.  (Id. at 10; Asmal Dep. at 47:3-48:25.)  These facts, viewed in the light most favorable to the non-moving plaintiffs, raise triable issues as to whether Teresa possessed or exercised the requisite authority to be an "employer" under the FLSA and NYLL.  As a result, summary judgment on this issue is not appropriate.  Defendants' motion for summary judgment as to Teresa Generoso's employer status is denied.

IV. Damages

Plaintiffs also seek damages from defendants, arguing that Joseph, Gian-Franco, and RCA are jointly and severally liable for damages for alleged FLSA and NYLL violations. Since, as noted above, there are disputed issues of fact regarding whether any of these defendants were plaintiffs' employers, "the extent of liability, i.e., the damages, is a matter to be addressed on another day."  Alvarez, 2014 WL 1679063, at *8.  Plaintiffs' motion for summary judgment as to liability and damages is denied.

**CONCLUSION**

For the foregoing reasons, plaintiffs' and defendants' motions for summary judgment are denied.

SO ORDERED.

_____
          /s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
          July 28, 2014